Joseph P. Molinari, J.
A motion is before the court in conjunction with the above-entitled matter for a judgment on the *485 pleadings pursuant to rule 112 of the Rules of Civil Practice, upon the ground that the answer of Hester Bancroft Berry is insufficient as a matter of law.
Many conferences have been held between the respective attorneys and the parties involved and the court in this litigation to the end that some possible settlement might be reached, with no successful result.
In her answer Mrs. Hester Bancroft Berry alleges that she is the widow of Romeyn Berry; that he died a resident of Tompkins County in which county his will has been probated; that Mrs. Berry and the Tompkins County Trust Company of Ithaca, New York, were named executors of Ms will; that the testator bequeathed $10,000 to his widow, prior to the payment of all other legacies; that he further bequeathed $4,000 to each of his daughters, and then created a trust of the residuary for his widow’s benefit, and after her death for the benefit of Ms two daughters and an adopted son; that by said last will and testament said Romeyn Berry intended to, and did distribute the principal and income remaining in the trusts created by an instrument dated December 11, 1928, and any and all amendments thereto. The said answer further asserts that said will constituted a testamentary disposition of the principal as well as the remaining income of said trust fund, and that any transfers made under the aforesaid trusts at the time of the inception thereof, or thereafter, constituted an illusory transfer thus violating her widow’s rights as provided under section 18 of the Decedent Estate Law.
To ascertain the powers retained by the grantor of the trust, it is necessary to construe the meaning of the clause which would permit modification or revocation of the trust. This clause number “ 8 ” is as follows: “ Notwithstanding anything to the contrary herein contained the Insured, from time to time during the continuance of the trust by instrument in writing, executed and acknowledged in the manner required for a deed of real property so as to enable it to be recorded in the State of New York and delivered to the Trustee, modify or alter in any manner, or revoke in whole or in part, this indenture and the trusts then existing and the estate and interests in property hereby created, and in case of such revocation said instrument shall direct the disposition to be made of the trust fund and the Trustee shall make, execute and deliver such instruments, if any, and make such conveyances and transfers of property as may be necessary or proper in order to carry the same into effect, and no one shall have any right, interest or estate under this Agreement. The *486 Donor may in like manner render this trust or any altered or supplemental trust agreement irrevocable.”
We note that the trust instrument has provided the manner in which it may be modified or revoked. On July 2, 1937 decedent modified Paragraph “ 2 ” of the original trust agreement by enlarging the investment powers of the trustee. Said instrument was acknowledged before a notary public and filed with the trust company.
A right retained by a donor in a trust instrument to modify or revoke an inter vivos trust agreement by ‘ ‘ instrument in writing, executed and acknowledged in the manner required for a deed of real property so as to enable it to be recorded in the State of New York and delivered to the Trustee ” is not exercisable by testamentary disposition. (Chase Nat. Bank v. Tomagno, 172 Misc. 63; 2 Restatement, Trusts, § 330, comment, pars. i. j; Broga v. Rome Trust Co., 151 Misc. 641.) Secondly, a testamentary right of revocation, if retained in a trust instrument, can only be exercised by the method set forth in the trust agreement, and, therefore, cannot be revoked by the donor during his lifetime.
A great deal has been made of the fact that at the time the testator made his will, he supposedly did not have assets sufficient outside of the trust to carry out its provisions. However, the briefs show that at the time of the drawing of the will, the testator owned the property of his first wife consisting of a home, which later sold for $10,000 and that he also had inherited from his aunt about 11 months before he drew the will approximately $13,000, of which amount only $1,497.69 was deposited in the trust fund; and there is the allegation that at the time his will was drawn his bank balance was $3,295.68.
Finally his widow contends that her widow’s rights were violated. The trust agreement was executed five years before his second marriage, and many years before his adoption of Warner Bott Berry. Only three additions to the principal of the trust fund were made, after the marriage to Hester Bancroft Berry, viz.: the sum of $1,497.69 in February, 1943, probably from the $13,000 inherited from his aunt; the sum of $10,000 in 1946 noted as “ Proceeds Sale of Triphammer Rd., Property ”, real estate inherited from his first wife, and $495.94 in January, 1947 for which no explanation is given.
It is argued that article 5 of the Real Property Law has no application as it deals with the exercise of powers by a grantee having power of appointment. Then an attempt is made to show that sections 165 and 170 of the same article control in this case. These sections also deal with powers of appointment.
*487 It is my opinion, that the case hinges on the meaning of the clause in the trust agreement, and as Romeyn Berry never exercised said power during his lifetime, and since there was no attempt to do so which was ineffectual, thus raising the question of whether substantial compliance had been made, then the motion herein must be granted, and the. accounting with its provision for payment of $10,500 as set forth in Schedule “ J ” is fair and equitable, and is understood to still be effective.
Thus it is unnecessary to take proof as to whether the 1946 and 1947 transfers of $10,000 and $495.24 were in violation of the widow’s rights under section 18 of the Decedent Estate Law.
An order may he submitted in accordance with this opinion.