John D. Bennett, S.
In rendering her account for judicial settlement, the executrix widow has presented a number of questions for adjudication, including construction of the will. Objections were filed by the decedent’s daughter (a devisee and residuary legatee), and a report was filed by the guardian ad litem appointed to represent the daughter’s two children who are trust beneficiaries.
A pretrial conference was held resulting in a stipulation entered on the record February 4, 1970 by which most of the objections were disposed of or withdrawn, and certain agreements were made subject to the approval of the court which will now consider all questions.
The testator died on October 24, 1968 after having made a will and codicil which were admitted to probate on November 27, 1968. The will was made on November 19, 1964 while the testator was married to one Marie H. Dougherty, now deceased. Subsequent to her death he married petitioner Eleanor *349 Dougherty and made a codicil on September 4, 1968. The codicil contained certain specific bequests and a devise (hereinafter quoted in full), modified certain provisions in the will, and in all other respects confirmed and ratified the same.
All the parties seem to be in accord regarding the facts and the various questions to be determined and have waived a hearing. The court will, therefore, attempt to dispose of all questions without referring specifically to the pleadings submitted.
TOTTEN TRUSTS AND GRANDCHILDREN’s TRUSTS
Article “ Second” of the codicil provides as follows:
“ Article third paragraphs a) and b) of said Will are modified as follows: I give and bequeath to my Trustee the sum of rive thousand ($5,000.00) dollars for each and every child of my beloved daughter, Elizabeth J. Doesoher [sic\, who shall be in being at the time of my death, or the balance in any savings account that I may have in my name in trust for any such of my grandchildren, whichever sum may be greater, and direct my Trustee to deposit each such sum in a separate trust account in a New York savings bank for the benefit of each of my said grandchildren until.he or she reaches the age of twenty-one years or sooner dies. My Trustee is directed and authorized to manage, administer and dispose of each said trusts in the same manner and with the same directions as set forth in Article third paragraph c) of said Will.”
The afore-mentioned paragraphs a) and c) of the will provide as follows:
“ third: If, however, I am not survived by my said beloved wife, Marie H. Dougherty, I dispose of my worldly possessions as follows:
“a) If at the time of my death I am maintaining any savings accounts in banks or other institutions in my name in trust for any named beneficiary, I give and bequeath the sums in said account or accounts to the named beneficiaries therein.
1 ‘ c) I give and bequeath to my Trustee the sum of Five Thousand ($5,000.00) Dollars for each and every child of my beloved daughter, Elizabeth J. Dosoher, who shall be in being at the time of my death, and direct my Trustee to deposit each such sum of Five Thousand ($5,000.00)! Dollars in a separate trust account in a New York savings bank for the benefit of each of my said grandchildren until he or she reach the age of twenty-one years or sooner dies. My Trustee is directed and autho *350 rized to collect and recover the income and revenue thereof for the benefit of the beneficiary of each such trust until such child has reached the age of twenty-one years or sooner dies. When and if such child shall have attained his or her twenty-first birthday, my Trustee shall pay over and distribute the principal of the trust as then constituted and any accumulated .income therefrom to my said grandchild for whom said trust shall have been created. If the beneficiary of any such trust shall die before reaching his or her twenty-first birthday, then and in that event, I give, devise and bequeath the corpus of said trust as then constituted to my issue, then surviving in equal shares per stirpes and not per capital”
At the time of his death the testator was maintaining seven savings bank accounts in his own name “ in trust for ” various persons and it is evident from the language in his will and codicil that he was very much aware of them. Three accounts were in trust for his daughter Elizabeth, two for her children, Virginia and Patricia, one for his nephew James and one for his niece Mary: It is conceded that all the bank books were in the testator’s possession at the time of his death, that the testator did not complete any of such gifts in his lifetime by an unequivocal action or declaration such as delivery or notice to any beneficiary. Neither have any of the parties pointed to any decisive act or declaration of its affirmance or revocation by the decedent during his lifetime, and, therefore, a ‘ ‘ presumption arises that an absolute trust was created as to [each] balance on hand at the death of the [testator] ” (Matter of Totten, 179 N. Y. 112, 126). It has accordingly become a common practice in this State to call such accounts “ Totten Trusts.”
The court must, therefore, look to the language of the will and codicil to determine whether the testator showed any particular intention regarding those trust accounts. Article “ third a) ” of the will refers generally to all of them and the codicil refers specifically to those accounts maintained in trust for the two grandchildren.
The arguments here take divergent positions. On behalf of the infant children it is urged that the language of the will does not revoke the Totten Trusts in their favor and the amounts thereof should go directly to the trustee without being subject (except as a last resort) to administration expenses and debts. Counsel for the estate argues otherwise, as discussed below.
The daughter urges that the language of the will confirms and does not revoke the three Totten Trust accounts in her favor, that the same passed to her outside the will. The attor *351 ney for the estate urges that all of the Totten Trust accounts were revoked, in effect. First, he emphasizes the language of article ‘ ‘ third a) ” of the will which bequeaths the ‘ ‘ sums ’ ’ in said accounts urging that all such bequests are general in nature. None of the numerous cases cited by him sustain that argument. He next points out that most of the gifts under the will and codicil are specific rather than general, and that the testator was undoubtedly aware that there would be no residuary estate for the purpose of meeting the expenses of administration, funeral expenses and debts; he urges that the testator’s purpose in mentioning the said accounts must therefore be construed as intending to bring the proceeds thereof into the estate.
The court has examined all of the cases cited by the estate and finds that they are distinguishable. In many instances cited there were testamentary expressions expressly referring to the Totten Trust accounts and revoking them. In other cases there were present special circumstances or expressions in the will from which the courts implied an intent to revoke the Totten Trusts, such as Walsh v. Emigrant Ind. Sav. Bank (106 Misc. 628, affd. 192 App. Div. 908, affd. 233 N. Y. 512), and Matter of Mannix (147 Misc. 479). In the latter (and similar other eases) the wills contained no express reference to the accounts but extraneous circumstances were considered to be determinative. In Walsh v. Emigrant Ind. Sav. Bank (supra), the court considered lifetime declarations by the testatrix to be determinative and in Matter of Mannix (supra) it was shown that the testatrix owned only the Totten Trust account and no other property, real or personal. That will provided for purchase of a burial plot, headstone, masses and payment of funeral expenses out of the “ estate ” which could not exist unless the trust account were included. These directions in the will were held by the court (pp. 482-483) to be “signals of intention to revoke the tentative trust.” (See, also, Matter of Service, 49 Misc 2d 399 and other cases cited there.)
In Mr. Dougherty’s will we find express references to the Totten Trust accounts which do not revoke them. It is clear that he owned ample property otherwise, real and personal. There were also three other accounts held jointly with his wife, and the will shows that he had in mind his other real and personal property. The decision of the Court of Appeals in Matter of Krycun (24 N Y 2d 710, revg. 32 A D 2d 616) is applicable here. The language of the will in that case was ‘ ‘ I give and bequeath any and all funds on deposit to my credit, in any bank * * * at the time of death, to the persons named in para *352 graph Fifth, the amount equal to 'the percentage specified in paragraph Fifth.” (Quoted from the dissenting opinion in the Appellate Division.) The decedent had four Totten Trust bank accounts at the time of her death and also two other bank accounts in her name alone. A pertinent fact was that two of the four trust accounts were established after drawing a prior will. A majority of the Appellate Division held that the foregoing language was “ clear and absolute to show the intention of the testatrix to revoke any prior trust bank accounts and to have such proceeds become part of the assets of the estate.” The Court of Appeals disagreed and reversed upon the dissenting opinion which was based upon some grounds which do not apply here. The Court of Appeals, however, expressly amplified its own position regarding the presumption quoted above in Matter of Totten stating that: “This presumption may be overcome, however, if the will of the depositor manifests a clear intention to revoke the trust.” (p. 713, citing several cases; emphasis supplied). The court unanimously held, contrary to the finding of the Appellate Division, that the language of the will did not show such a clear intention. In the judgment of this court, the following rule, stated in Krycun (supra) at page 713, is determinative of the question here: “ If the money on deposit in the four trust accounts comprised all or most of the assets of the estate or if the trust accounts were the only bank accounts in the decedent’s name, that would be a strong indication that the testatrix intended to revoke the Totten Trusts. Such, however, was not the ease. The money on deposit in the trust accounts only comprised a little more than one third of the total estate, and as indicated earlier the testatrix had two bank accounts in her name alone. We conclude, therefore, that the language in paragraph Seventh, in itself, under the facts of this case, is insufficient to overcome the presumption of nonrevocation. In such a case it is necessary to scrutinize the surrounding circumstances and the will as a whole, very carefully, in determining the true intention of the testatrix.” It is this court’s opinion that the language in the will and the circumstances shown in the papers presented all 1 ‘ manifest an intention ’ ’ on the part of Mr. Dougherty not to revoke but rather to confirm all his Totten Trusts, except those for the grandchildren treated below.
The Surrogate of Kings County cited four eases as authority in Matter of Taliento (9 Misc 2d 167,169) to support a holding that a gift by will of a Totten Trust account to the beneficiary thereof must be deemed a confirmation of the Totten Trust.
In Matter of Stein (42 Misc 2d 787), the Surrogate of Bronx *353 County held that a gift of the proceeds of a bank account maintained during his lifetime by the testator in trust for A, B and C, was revoked only as to C where the will bequeathed said proceeds to A, B and D. It was there held that the language showed an intention merely to substitute D as one of the beneficiaries in place of C, thereby confirming the Totten Trust as to A and B.
The only conclusion this court may reach is that article “ Third a) ” of the will expressly confirms the Totten Trust accounts for those beneficiaries named therein, other than the infant grandchildren.
On the other hand, the court finds that the two trust accounts in the names óf the grandchildren were expressly revoked by the codicil which ‘ ‘ modified ’ ’ the will and gave the proceeds to a trustee to hold the same, collect the income and to use it until the grandchildren reach 21 years of age. The codicil provided for further disposition in case of the death of either child before reaching that age. The effect intentionally wrought by the testamentary dispositions is therefore inconsistent with and vastly different from what would have been achieved if those accounts had not been so treated in the codicil. If left intact the proceeds would have gone directly to the children on the testator’s death, as absolute gifts.
These dispositions in trust for the two infant grandchildren are accordingly held to be specific dispositions to the trustee within the meaning of EPTL 13-1.3. This makes them subject to abatement and apportionment for the payment of estate obligations but only to the extent and in the order therein set forth.
m * *